FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 JUL 12 PM 3: 25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE
ASSIGNED CALL NUMBER 513-288-9121
(AT&T)

CASE NO. **1 ¦ 18 M J - 4 1 8**
UNDER SEAL

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Mitchell S. Bedard, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant under Federal

Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location

of the cellular telephone assigned call number **513-288-9121** ("**Target Telephone**"), whose

service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S.

Highway 1, North Palm Beach, Florida.   The targeted cell phone is described herein and in

Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA"),

and have been so employed since October 2015.  I have been a law enforcement officer since June

25, 2009, spending three years with the United States Border Patrol and three years with

Immigration and Customs Enforcement.  I have graduated from the U.S. Border Patrol Academy

and DEA Basic Agent Academy.  During these courses I received training in the investigation of

offenses involving controlled substances.  As a Special Agent of the DEA, my duties and

responsibilities have included conducting criminal investigations for violations of federal law,

particularly those found in Title 21 and Title 18 of the United States Code. As a Special Agent of

the DEA, my duties and responsibilities have included conducting criminal investigations for

violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in multiple criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21 of the United States Code).

3.      I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate drug violations.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by Anthony PHILLIPS, Charles ODEN, and other as-yet unknown individuals. I believe there is probable cause that the **Target Telephone** is being used in furtherance of the aforementioned crimes. There is also probable cause to believe that the location of **Target Telephone** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## THE RELEVANT FACTS

1.      On May 18, 2018, Cincinnati Police Department conducted a vehicle stop on Anthony PHILLIPS as he operated a truck with open traffic capiases. During the traffic stop, PHILLIPS fled on foot but was apprehended shortly thereafter. A quantity of cocaine, PHILLIPS' watch, and keys to the truck PHILLIPS was operating were located in close proximity to where PHILLIPS was apprehended. Furthermore, PHILLIPS possessed a bag which held a plastic jar containing more cocaine.

2.      During a post arrest interview, PHILLIPS admitted to possessing the controlled substances recovered during his arrest. Additionally, PHILLIPS admitted to possessing additional quantities of cocaine stored inside of 3421 Trimble Avenue, Apartment #1, Cincinnati, Ohio. PHILLIPS provided consent to search the residence. During the consent search, officers located additional quantities of cocaine, kilogram wrappers, a digital scale, U.S. currency, drug processing equipment (gloves and drug press), four cellphones, and a stolen handgun. In total, officers located and seized approximately 1.948 kilograms of cocaine and seven grams of fentanyl[1]. PHILLIPS was processed and released in anticipation of his continued cooperation with law enforcement. On May 21, 2018, PHILLIPS contacted Cincinnati Police Officer Josh Schrage and advised that he (PHILLIPS) no longer wished to cooperate with law enforcement.

3.      In May 2018, Investigators met with a CS[2] who admitted that he/she had recently acquired approximately a kilogram of cocaine from PHILLIPS for approximately $32,000. The CS said that that he/she met PHILLIPS through another source of supply named "Little Charles" and that PHILLIPS was one of "Little Charles'" primary customers. The CS also admitted to

---

[1] Weight and substance obtained from a report prepared by the Hamilton County Coroner's Laboratory
[2] The CS has been convicted of drug violations in the past and had provided information to law enforcement officers in exchange for consideration in his pending drug violation. Information provided by the CS have been independently corroborated by investigators.

purchasing kilogram quantities of cocaine from "Little Charles" in past. The CS described "Little Charles" as a black male, 5'05" to 5'06" tall, stocky build and being 42 to 43 years of age and was able to identify "Little Charles" as Charles ODEN from a photograph. The CS stated ODEN previously used telephone number 513-915-3632 and felt confident that he/she could obtain a current number for ODEN.

4.      In June 2018, the CS told Cincinnati Police Department Narcotics Investigators that he/she spoke to ODEN on ODEN's new telephone number 513-952-7704. During the call, the CS and ODEN discussed PHILLIPS' arrest. ODEN told the CS that because of PHILLIPS' pending charges, ODEN was not going to conduct any drug business for 60 days to let things cool off. However, during the call ODEN told the CS that ODEN knew someone who had marijuana for $240 per ounce.

5.      On June 25, 2018, Cincinnati Police Department Narcotics Investigators directed the CS to place a recorded and monitored telephone call to ODEN on telephone number 513-952-7704. During the call, ODEN and the CS discussed ODEN obtaining a "zip" of "smoke." Based on my training, experience, and information provided by the CS, I believe that a "zip" of "smoke" is an ounce of marijuana.

6.      On June 21, 2018, SA Tyler Field obtained call and subscriber records for the 12 most frequent contacts of a mobile telephone, with assigned telephone number 513-602-0285, seized during the consent search at PHILLIPS' apartment on May 18, 2018. According to call records, six of these contacts began calling the **TARGET TELEPHONE** on or after June 2, 2018.

7.      On June 25, 2018, SA Field obtained subscriber and call records for the **TARGET TELEPHONE** from AT&T pursuant to an administrative subpoena. According to subscriber records, the **TARGET TELEPHONE** was activated on May 19, 2018, the day after PHILLIPS was arrested and released, with no listed subscriber name or address. According to call records,

29 telephone numbers previously contacting the telephone seized from PHILLIPS' apartment following his arrest were also in contact with the **TARGET TELEPHONE.** Additionally, between May 26, 2018 and June 30, 2018, there were at least 72 communications between the **TARGET TELEPHONE** and ODEN on 513-952-7704.

8.      Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that PHILLIPS was arrested and subsequently released on May 18, 2018, my knowledge that the **TARGET TELEPHONE** was activated the following day, and my knowledge there are a large number of common contacts between the telephone seized from PHILLIPS' apartment and the **TARGET TELEPHONE**, I believe that PHILLIPS is the user of the **TARGET TLEPHONE**.  Based on my knowledge that PHILLIPS was arrested in possession of cocaine, the CS's statement that ODEN is a cocaine source of supply, the CS's statement that he/she contacted ODEN on telephone number 513-952-7704 and discussed PHILLIPS' arrest and that ODEN was going to let things cool off following PHILLIPS' arrest, I believe that ODEN and PHILLIPS are involved in a drug trafficking conspiracy. Consequently, I believe that the communications between the **TARGET TELEPHONE** and ODEN's telephone number 513-952-7704 were in furtherance of their drug trafficking conspiracy.

11.     Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that CS-1 called the **Target Telephone** and talked to ODEN, and my knowledge that the **Target Telephone** subscriber information contains a fictitious address and name, I believe that ODEN used the **Target Telephone** to facilitate the transaction of one ounce of marijuana with CS-1.

9.      Based on the aforementioned facts and reporting, I believe there is probable cause to show that Anthony PHILLIPS is using **Target Telephone** to commit federal narcotics offenses

and that the information requested will assist the DEA in identifying co-conspirators and additional cellular devices owned and operated by the targeted subjects.

10.  In my training and experience, I have learned that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

11.  Based on my training and experience, I know that wireless phone companies can collect E-911 Phase II data about the location of the target cell phone, including by initiating a signal to determine the location of the target cell phone on AT&T network or with such other reference points as may be reasonably available.

12.  Based on my training and experience, I know that wireless phone companies can also collect cell-site data about the target cell phone.

## AUTHORIZATION REQUEST

6

13.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

14.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

15.     I further request that the Court direct the AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the target cell phone on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

16.     I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the target cell phone to determine the location of the target cell phone.

17.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the date of this warrant (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705.   Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

18.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cell phone outside of daytime hours. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

David A. Zummach
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 12 day of July, 2018.

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

8

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-288-9121 (Target Telephone)**, whose wireless service provider is AT&T, a wireless telephone service provider headquartered in Bellevue, Washington.

2. Information about the location of the cellular telephone assigned call number **513-288-9121 (Target Telephone)** that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the target cell phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the target cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the target cell phone on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance. In addition the government may initiate a signal to determine the location of the target cell phone.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).